Tommy L. HEFLEY, Ronald G. Wood, and James A. Popplewell, Plaintiffs,

v.

TEXTRON, INC. and Bell Helicopter Textron, Third-Party Plaintiffs, Defendants-Appellants,

v.

UNITED STATES of America, Kansas Army National Guard and its Adjutant General Major General Edward R. Fry, individually, and The State of Kansas, Third Party Defendants, Appellees.

Nos. 81–2091, 81–2307 and 81–2308.

United States Court of Appeals, Tenth Circuit.

Aug. 10, 1983.

Fred L. Marrs, Wichita, Kan. (Windell G. Snow and Susan K. McKee of Curfman, Harris & Weigand, Wichita, Kan., with him on the brief), for appellants.

Susan Gillett, Trial Atty., U.S. Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Paul M. Honigberg, Trial Atty., U.S. Dept. of Justice, Washington, D.C., and Jim J. Marquez, U.S. Atty., Wichita, Kan., with her on the brief), for the U.S. and Major General Edward R. Fry.

Robert T. Stephan, Atty. Gen. of Kansas, and William M. Henry, Asst. Atty. Gen. of Kansas, Topeka, Kan., for Kansas Army Nat. Guard, Adjutant General Edward R. Fry, and The State of Kan.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Textron, Inc. and Bell Helicopter Textron (Textron), third-party plaintiffs, appeal from the district court's grant of summary judgment in favor of the United States, the Kansas Army National Guard (KANG), Major General Edward R. Fry, and the State of Kansas.

The underlying action arose from a helicopter crash near Salina, Kansas on July 19, 1976. The helicopter was manufactured by Textron, owned by the United States, and operated by KANG. Investigations by the United States Army and KANG apparently generally attributed the cause of the crash to pilot error. Three occupants of the helicopter, Lieutenant Colonel Ronald G. Wood, PFC Tommy L. Hefley, and the pilot, CW 3 James A. Popplewell, were injured in the accident. All three were members of KANG and were participating in federal training exercises. The injured national guardsmen received treatment and rehabilitation at military facilities and each received federal military disability benefits.

Wood, Hefley, and Popplewell brought suit against Textron, alleging negligence, gross and wanton conduct, strict liability in tort, and breach of express and implied warranties. Federal jurisdiction was based on diversity of citizenship. Textron then filed a third-party complaint against the United States, KANG, Major General Fry, and the State of Kansas, seeking indemnity, contribution, discovery, and assessment of proportionate fault under the Kansas com-

parative negligence statute. The third-party defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the grounds that the third-party action was barred by the doctrine of sovereign immunity.

After accepting affidavits on the motions, the trial court treated the motions to dismiss as motions for summary judgment. In a memorandum and order that was specifically incorporated into its final order, the trial court concluded that the United States and Major General Fry were immune from suit under the doctrines announced in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). The court found that it did not have jurisdiction over Textron's claim that there existed an implied contract of indemnity between it and the United States. The court then ruled that Kansas and KANG were immune from suit under the provisions of the Eleventh Amendment. Finally, the court concluded that no procedural mechanism existed which would permit Textron to join the immune entities solely for the purposes of discovery and assessment of proportionate fault. The court accordingly granted summary judgment in favor of the third-party defendants.

The issues on appeal are not well defined. It appears, however, that Textron concedes that the United States, KANG and Kansas are immune from suit to the extent that Textron seeks indemnity and contribution based on concepts of negligence. Consequently, we perceive the following to be the matters in dispute:

(1) Can Major General Fry be held liable for his own negligence in performing non-discretionary duties?

(2) Can the third-party defendants be kept in the case to determine whether they are liable to Textron under a theory of an implied contract of indemnity?

(3) Can the third-party defendants be kept in the case, despite their immunity, for purposes of discovery and assessment of proportionate fault under the Kansas comparative negligence statute?

## LIABILITY OF MAJOR GENERAL FRY

Major General Fry serves both the United States and KANG. Because of this dual role, he asserted immunity from suit on both federal and state law grounds. The trial court determined that state law immunity depended on resolution of factual issues concerning Fry's good faith. *See Kern v. Miller,* 216 Kan. 724, 533 P.2d 1244, 1248 (1975). Relying on the federal *Feres* doctrine, however, the court concluded that Fry was immune from a suit for damages. Textron contends that under either federal or state law, a public officer such as Fry is entitled to immunity only if his actions were discretionary functions, as opposed to operational functions. According to Textron, Fry's alleged negligent acts involved operational functions, so that he was not entitled to the protection of sovereign immunity. *See Jackson v. Kelly,* 557 F.2d 735, 737 (10th Cir.1977); *Kern v. Miller, supra,* 533 P.2d at 1248.

█ Initially, we note that Textron has not challenged Fry's status as a federal officer, nor do we discern any reason to question that status. Thus, if federal immunity exists, the availability of state immunity is immaterial. We conclude that Fry possessed federal immunity under the federal *Feres* doctrine.

The *Feres* doctrine arose out of three related cases decided in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In the lead case, the Supreme Court decided that although the then new Federal Tort Claims Act contained no such express exception, the United States would not be liable under the Federal Tort Claims Act for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. This judicial exception to the broad waiver of sovereign immunity contained in the Tort Claims Act was roundly

criticized, but any question concerning its validity was dispelled in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

In *Stencel,* the Supreme Court not only reaffirmed the *Feres* doctrine, it also extended the doctrine to absolve the United States from liability "when a member of the Armed Services brings a tort action against a private defendant and the latter seeks indemnity from the United States under the Tort Claims Act, claiming that Government officials were primarily responsible for the injuries." *Stencel, supra,* 431 U.S. at 670, 97 S.Ct. at 2057. In *Stencel,* the plaintiff was a member of the National Guard who sued the manufacturer of certain aircraft components and the United States. The manufacturer cross-claimed against the United States, seeking indemnity. In upholding the dismissal of the claims against the United States for lack of subject matter jurisdiction, the Court noted that three factors supported the application of *Feres.* First, there is a "distinctively federal" relationship between the United States and members of its armed forces and its suppliers of ordinance, so that the liability of the United States should not depend on the situs of the accident. Second, the United States has established generous "no fault" compensation schemes for servicemen as a substitute for tort liability. The Court concluded that those schemes existed not only to provide a remedy to injured servicemen, but also to limit the liability of the United States:

> Given the broad exposure of the Government, and the great variability in the potentially applicable tort law, see *Feres,* 340 U.S. at 142–143, 71 S.Ct. at 157–158, the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries. To permit [the claim for indemnity] would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefits Act.

*Stencel, supra,* 431 U.S. at 673, 97 S.Ct. at 2059. Third, the Court noted that, whether the suit is a direct one or a claim for indemnity, suits challenging orders given or acts undertaken in the course of military duty would have a deleterious effect on military discipline. *Id.* at 671–73, 97 S.Ct. at 2057–2059. In *Carter v. City of Cheyenne,* 649 F.2d 827, 831 (10th Cir.1981), this court followed *Stencel* and *Feres* in ruling that a private defendant could not implead and recover from the United States in a suit by a serviceman's personal representative.

In decisions both preceding and following *Stencel,* courts have routinely ruled that the protection of the *Feres* doctrine extends to officers and other servicemen, as well as to the United States. *See, e.g., Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1152 (5th Cir.1981); *Hass v. United States,* 518 F.2d 1138, 1143 (4th Cir. 1975); *Mattos v. United States,* 412 F.2d 793, 794 (9th Cir.1969); *Bailey v. DeQuevedo,* 375 F.2d 72, 73–74 (3rd Cir.), *cert. denied,* 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967). Indeed, in *Feres, supra,* 340 U.S. at 141, 71 S.Ct. at 157 (footnote omitted), the Supreme Court stated: "We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving." While we are unsure of the extent to which the first two *Stencel* factors would apply in this case, clearly a suit against Fry would "involve second-guessing military orders, and would . . . require members of the Armed Services to testify in court as to each other's decisions and actions." *Stencel, supra,* 431 U.S. at 673, 97 S.Ct. at 2059. Such a suit necessarily would have an adverse effect on military discipline. That all three of the *Stencel* factors are not present under the facts of a particular case does not mean that the *Feres* doctrine should not apply. *Uptegrove v. United States,* 600 F.2d 1248, 1250 (9th Cir.1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980). Thus, we hold that a private defendant is barred from asserting a claim for indemnity against an officer of an injured serviceman

when the serviceman's injuries arose from activity incident to service.

The officer's immunity applies irrespective of whether the officer's allegedly negligent act was discretionary or ministerial. *See Roach v. Shields,* 371 F.Supp. 1392, 1393 (E.D.Pa.1974). The discretionary function exception is an express exception to the Federal Tort Claims Act. 28 U.S.C. § 2680(a) (1976). The *Feres* doctrine is a separate, judicial exception to the Tort Claims Act. Thus, contrary to Textron's assertions, Fry is immune even if his actions were purely ministerial.

The only other reason Textron contends that Fry is not immune is that the injured parties were not injured while on "active duty" as defined by 32 U.S.C. § 101(12) (Supp. IV 1980). We simply note that *Feres* and *Stencel* are not limited by that definition. Rather, those cases hinge on whether the injuries "arose out of or are in the course of activity incident to service." *Feres, supra,* 340 U.S. at 146, 71 S.Ct. at 159. *See also Stencel,* 431 U.S. at 671, 97 S.Ct. at 2057–2058 (quoting *Feres*). While courts in numerous cases have had to wrestle with the question of whether various activities were incident to military service, *see, e.g., United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954); *Stanley v. Central Intelligence Agency, supra,* 639 F.2d at 1150–52; *Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir.1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975), in this case the trial court correctly found that Textron failed to controvert the affidavits which established that the plaintiffs were engaged in federal training exercises at the time of the accident. Thus, we hold that the plaintiffs were injured incident to federal military service and the *Feres* and *Stencel* doctrines render Major General Fry immune from Textron's claim for indemnity.

## IMPLIED CONTRACTS OF INDEMNITY

Textron next contends that even if the third-party defendants are immune from suits for indemnity or contribution based on negligence, it still can recover from the third-party defendants on the grounds of implied contracts of indemnity. That is, Textron claims that the third-party defendants made implied warranties that they would inspect and maintain the helicopter and insure that it was properly flown by qualified personnel. Textron argues that the third-party defendants breached their warranties, that those breaches caused the accident, and that consequently the third-party defendants should indemnify Textron against any liability assessed against it.

■ With respect to Major General Fry, the trial court found that there were no allegations of a contractual relationship between Textron and Fry. We affirm this finding and reject any claim of an implied contract of indemnity between Fry and Textron.

■ With respect to the United States, the trial court, while declining to decide expressly whether *Feres* and *Stencel* would bar such a claim, concluded that it did not have jurisdiction over the claim. The United States has waived sovereign immunity for actions based on express or implied contracts; however, the jurisdiction of the federal district courts is limited to claims not exceeding $10,000. 28 U.S.C. § 1346(a)(2) (Supp. II 1978). The Court of Claims has exclusive jurisdiction over such claims in excess of $10,000. 28 U.S.C. §§ 1346 and 1491. Since Textron did not attempt to limit its claim to $10,000 or less, the court ruled that it had no jurisdiction over the claim based on an implied contract of indemnity.

■ The reasoning of the trial court is correct and we affirm it. However, we also note that such a claim for indemnity should be barred by *Feres* and *Stencel*. Certainly the liability of the United States in such suits would be affected by the situs of the contract, despite the "distinctively federal" relationship between the United States and

its suppliers of ordnance. *See Stencel, supra,* 431 U.S. at 672, 97 S.Ct. at 2058. Nor can it be denied that a claim based on implied contract of indemnity would circumvent the limitations on liability provided by the federal military compensation schemes. *See id.* at 673, 97 S.Ct. at 2058–2059. Finally, the claimed breaches here—failure to inspect and maintain, failure to follow regulations, and permitting an inexperienced pilot to fly—would adversely affect military discipline by questioning military practices and orders and requiring the testimony of servicemen as to each other's actions and orders. *See id.* As an alternative basis for affirming the decision of the trial court, therefore, we hold that where the injured party is a serviceman injured incident to military service, *Feres* and *Stencel* bar a private party from recovering from the United States on a claim of implied contract of indemnity.

■ Textron asserted a similar claim against Kansas and KANG. The critical issue with respect to those parties is whether the Eleventh Amendment would bar such a claim. The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State .... " Moreover, to the extent a particular state has not consented to suit, the Eleventh Amendment also bars suits in federal courts by citizens of that state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Unified School District No. 480 v. Epperson,* 583 F.2d 1118, 1121 (10th Cir.1978).

The first question we must confront is whether KANG is an arm of the state which is entitled to Eleventh Amendment immunity. To answer that question, we must examine: "(1) To what extent does [KANG], although carrying out a state mission, function with substantial autonomy from the state government and, (2) to what extent is [KANG] financed independently

of the state treasury." *Epperson, supra,* 583 F.2d at 1121–22. With respect to the first element, while KANG is subject to substantial control by the United States, itself an immune entity, the State of Kansas exercises significant authority over it. The Governor of Kansas serves as commander-in-chief and appoints the adjutant general and other officers. Kan.Stat.Ann. §§ 48–203 and 208 (1982 Supp.). The governor may cause to be discharged any commissioned officer "if the officer persists in willfully neglecting the duties of the officer's office or fails to properly account for public property or money in the officer's possession as an officer." Kan.Stat.Ann. § 48–203 (1982 Supp.). The governor also has the authority to order KANG into the active service of the state under certain conditions. Kan.Stat.Ann. § 48–241 (1976).

The second element, that of financial independence, is controlled by the following test: does the suit seek to impose "a liability which must be paid from public funds in the state treasury...." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) (citing *Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355–56). *See also Epperson, supra,* 583 F.2d at 1122. Since KANG has no independent taxing power, a judgment against it apparently would be satisfied from state funds.

Thus, we conclude that KANG is not independent of the State of Kansas; rather, it is an arm of the state and entitled to any immunity which the state possesses. Under similar circumstances, the Court of Appeals for the Fourth Circuit implicitly reached the same conclusion. *Henry v. Textron, Inc.,* 577 F.2d 1163, 1164 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 705 (1978).

■ Since the third-party plaintiffs are residents of Delaware, Rhode Island, or Texas, the Eleventh Amendment on its face bars their claims based on implied contract against the State of Kansas and KANG.

Even if the citizenship of the original plaintiffs, one of whom is a citizen of Kansas, alters the application of the Eleventh Amendment, we conclude that the state and KANG are immune from suit because the state has not consented to be sued. *See Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355–56.

The claim here is based on an implied contract of indemnity. Under prior Kansas law, such a suit was expressly barred by the doctrine of sovereign immunity:

> (1) It is hereby declared and provided that the following shall be immune from liability and suit on an *implied contract,* or for negligence or any other tort . . . ;"
>
> (1) The state of Kansas; and
>
> (2) boards, commissions, departments, agencies, bureaus and institutions of the state of Kansas; . . . .

Kan.Stat.Ann. § 46–901, *repealed by* Kansas Tort Claims Act, L.1979, Ch. 186, § 33 (emphasis added). *See also Malone v. University of Kansas Medical Center,* 220 Kan. 371, 552 P.2d 885, 888 (1976). The Kansas Tort Claims Act, codified at Kan.Stat.Ann. §§ 75–6101 through 6118 (1982 Supp.), repealed that statute and waived sovereign immunity for claims based on the "negligent or wrongful act[s] or omission[s] of [governmental] employees while acting within the scope of their employment . . . ." Kan.Stat.Ann. § 75–6103(a) (1982 Supp.) On its face, however, the Tort Claims Act expressly limits its application to "claims arising from acts or omissions occurring on and after the effective date of this act." Kan.Stat.Ann. § 75–6101(b) (1982 Supp.) *See also Hendrix v. City of Topeka,* 231 Kan. 113, 643 P.2d 129, 132 (1982).

▉ At the time Textron's claim arose, the state and KANG were immune from suit on a claim sounding in implied contract. We do not decide whether by enacting the Tort Claims Act the State of Kansas has consented to be sued on claims based on implied contract. We do conclude, however, that the repeal of the sovereign immunity statute applies only to claims arising after the effective date of that repeal. *See Hendrix, supra,* 643 P.2d at 132–34. Thus, the State of Kansas has not consented to be sued on Textron's claim of an implied contract of indemnity, and the Eleventh Amendment bars that claim. *Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355–56.

## COMPARATIVE NEGLIGENCE AND DISCOVERY

Textron's primary argument on appeal is that even though the third-party defendants are immune from a suit seeking to recover money damages against those parties, Textron can nevertheless join those parties for the purposes of discovery and assessment of their comparative fault. Textron first asserts that the parties may be joined under the following provision of the Kansas comparative negligence statute:

> On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action.

Kan.Stat.Ann. § 60–258a(c) (1976). Textron asserts that this provision creates substantive rights which federal courts must honor. Alternatively, Textron argues that the immune parties can be brought into the suit as third-party defendants under Fed.R. Civ.P. 14, or can be joined as defendants under Fed.R.Civ.P. 19 or 20. To examine Textron's contentions we will distinguish between federal and state parties.

*The United States of America and Major General Edward R. Fry*

It is well established that the "United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* —— U.S. ——, ——, 103 S.Ct. 2961, 2964, 77 L.Ed.2d 580 (1983). *See also,*

*United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *Flynn v. United States,* 631 F.2d 678, 681–82 (10th Cir.1980). Thus, unless the United States has consented to be sued for the purposes of discovery and the assessment of proportionate fault, or unless such a suit is not one to which the defense of sovereign immunity applies, the district court had no jurisdiction to keep the United States and Fry in the suit for even those limited purposes. *Mitchell, supra,* —— U.S. at ——, 103 S.Ct. at 2964; *Stanley v. Central Intelligence Agency, supra,* 639 F.2d at 1156.

Textron argues that the United States has consented to this type of suit through the broad waiver of immunity contained in the Federal Tort Claims Act, *Feres* and *Stencel* notwithstanding. We can not agree with Textron's reasoning.

■ As was illustrated in the earlier discussion of Fry's liability, and as the trial court concluded, the principles enunciated in *Feres* and *Stencel* do apply under the circumstances of this suit, so that the waiver of immunity contained in the Tort Claims Act is not available. It is clear that when "a case under the Federal Tort Claims Act falls within the *Feres* doctrine, under which the Supreme Court has held that this Act did not waive immunity for service related claims, the federal court lacks jurisdiction to hear the matter." *Carter v. City of Cheyenne, supra,* 649 F.2d at 831. *See also Stencel, supra,* 431 U.S. at 669, 674, 97 S.Ct. at 2056, 2059; *Stanley, supra,* 639 F.2d at 1157. It is our view, therefore, that since the district court had no subject matter jurisdiction over the claims against the federal defendants, it had no jurisdiction over the more limited claims requesting that they remain parties for the purposes of discovery and assessment of proportionate fault.

■ This court does not have the power to enlarge the jurisdiction of the federal district courts by judicial interpretation. *American Fire & Casualty Co. v.*

*Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951). Similarly, though the federal rules may prescribe the method by which a claim can be asserted, the rules themselves can not confer jurisdiction over a claim where jurisdiction does not otherwise exist. *United States v. Sherwood, supra,* 312 U.S. at 591, 61 S.Ct. at 771; *Goodrich v. Burlington Northern Railroad Co.,* 701 F.2d 129, 130 (10th Cir.1983); Fed.R. Civ.P. 82. Nor can the State of Kansas, through the procedure authorized in Kan. Stat.Ann. § 60–258a(c), *supra,* invest a federal district court with jurisdiction it would not otherwise possess:

> Whilst it will not be denied, that the laws of the several States are of binding authority upon their domestic tribunals, and upon persons and property within their appropriate jurisdiction, it is equally clear that those laws cannot affect, either by enlargement or diminution, the jurisdiction of the courts of the United States as vested and prescribed by the constitution and laws of the United States . . . .

*Watson v. Tarpley,* 59 U.S. (18 How.) 517, 520, 15 L.Ed. 509 (1856). *See also Burford v. Sun Oil Co.,* 319 U.S. 315, 317, 63 S.Ct. 1098, 1099, 87 L.Ed. 1424 (1943). Simply stated, inasmuch as the United States has not consented to be sued for the purpose of discovery and the assessment of proportionate fault, the federal courts have no jurisdiction over such a suit. Neither this court, the Federal Rules of Civil Procedure, nor the State of Kansas can avert that result.

Textron alternatively argues that since it only seeks discovery and assessment of proportionate fault, and not money damages, this action is not a "suit" which would be precluded by the doctrine of sovereign immunity. That is, the suit would not result in a drain on the public treasury or interfere with public administration, so the doctrine should not be invoked. *See Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947); *United States v. Briggs,* 514 F.2d 794, 808 (5th Cir.1975). It

is unnecessary for us to decide whether this type of suit is barred by the doctrine of sovereign immunity. For even if we assume that sovereign immunity would not bar such a suit in the first instance, we are convinced that there is no procedural mechanism by which the United States can be joined in this action.

Textron argues that section 60–258a(c) of the Kansas statutes, *supra,* confers upon it a substantive right to have all joint tortfeasors joined in a single action. If that section is not applied, Textron argues that a different outcome will obtain depending on whether the underlying suit is brought in state or federal court; thus, federal courts should follow the Kansas statute in diversity cases. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945).

Section 60–258a(c) of the Kansas Tort Claims Act does provide that a defendant may move to join as a party any other person whose negligence is claimed to have contributed to the plaintiff's damages. Further, the Kansas Supreme Court has ruled that an otherwise immune party may nevertheless be joined pursuant to section 60–258a(c) for the purpose of assessing comparative fault. *Wilson v. Probst,* 224 Kan. 459, 581 P.2d 380, 384 (1978); *Miles v. West,* 224 Kan. 284, 580 P.2d 876, 879 (1978).

Of greater significance to this suit, however, is Kan.Stat.Ann. § 60–258a(d) (1976):

Where the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party shall be liable for that portion of the total dollar amount awarded as damages to any claimant in the proportion that the amount of his or her causal negligence bears to the amount of the causal negligence attributed to all parties against whom such recovery is allowed.

The Kansas Supreme Court has held that this section abolished the concept of joint and several liability among joint tortfeasors so that the "individual liability of each defendant for payment of damages will be based on proportionate fault, and contribution among joint judgment debtors is no longer required in such cases...." *Wilson v. Probst, supra,* 581 P.2d at 384 (quoting *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867, 874 (1978). Further, the proportionate fault of all participants in an occurrence must be determined in a single action, even though some participants can not be joined in the action or required to pay their proportionate fault. *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 634 P.2d 1127, 1132 (1981); *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788, 803 (1980) (citing *Brown v. Keill, supra,* 580 P.2d at 876).

▐ Thus, under the Kansas law of comparative negligence, a defendant has a right to have the fault of all participants in an occurrence measured in one action, and to reduce his or her liability by the amount of fault attributable to the other participants, irrespective of whether they are joined as parties or are immune from liability. Section 60–258a(c) provides a procedure by which that substantive right can be asserted, but the right can be protected even if that procedure is not applied. The Kansas federal district courts can and do protect the right of defendants by allowing joinder or impleader where it is possible, or by resorting to the "phantom party" concept, whereby the proportionate fault of tortfeasors who can not be made parties to the suit is nevertheless determined. *See Baird v. Phillips Petroleum Co.,* 535 F.Supp. 1371, 1378–79 (D.Kan.1982); *Stueve v. American Honda Motors Co.,* 457 F.Supp. 740, 749–50 (D.Kan.1978). Accordingly, whether a suit is brought in state court or federal court, a defendant will be liable only for his or her own proportionate fault.[1]

1. We offer no opinion concerning whether the United States could be joined for the purpose of assessing its comparative fault pursuant to section 60–258a(c) if the underlying suit were brought in state court.

Textron argues that because discovery from a non-party is more limited than that available from a party, if the United States and KANG are not joined as parties in this action Textron will be unable to discover all of the evidence in the possession of those entities. From that fact, Textron extrapolates that a different proportion of fault will be assigned to the various entities than if full discovery were allowed. Thus, a different outcome would result depending on whether the action was brought in state court or federal court.

Even if we accept Textron's prediction,[2] we believe that speculation concerning different results does not satisfy the outcome determinative test prescribed in *Guaranty Trust, supra.* In *Guaranty Trust* the Supreme Court stated that the facile characterization of a state law as "substantive" or "procedural" does not determine whether under the doctrine announced in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court must apply the state law:

> the intent of that decision [*Erie*] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, *so far as legal rules determine the outcome of a litigation,* as it would be if tried in a State court. The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result.

*Guaranty Trust, supra,* 326 U.S. at 109, 65 S.Ct. at 1470. Accordingly, where failure to follow the state law would produce a demonstrably different outcome, federal courts in diversity cases have followed state laws without regard to their characterization as procedure or substance. For example, the Supreme Court has followed state laws such as ones concerning statutes of limitation, *Guaranty Trust, supra,* 326 U.S. at 109–10, 65 S.Ct. at 1470, the tolling of statutes of limitation, *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 533, 69 S.Ct. 1233, 1234, 93 L.Ed. 1520 (1949), and contributory negligence, *Palmer v. Hoffman,* 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943).

As the Court stated in *Guaranty Trust,* and reaffirmed in *Hanna v. Plumer,* 380 U.S. 460, 467–68, 85 S.Ct. 1136, 1141–1142, 14 L.Ed.2d 8 (1965), the outcome of a case should be substantially the same in state and federal court. In *Hanna, supra,* 380 U.S. at 468–69, 85 S.Ct. at 1142–43, the Court noted that "nonsubstantial, or trivial, variations" do not violate the rules of *Erie* and *Guaranty Trust.* In the instant case, to any extent that inclusion of the United States as a party would allow more extensive discovery, which presumably would provide evidence that would persuade the jury to assign a lesser degree of fault to Textron, we conclude that the effect on the outcome of the case is trivial. In no event will Textron be liable for more than its proportionate share of fault. That is the substantive right the federal courts must protect. We hold that section 60–258a(c) is procedural, is not outcome determinative, and is not binding on the federal courts.[3]

**2.** We note that while discovery from non-parties is often more inconvenient and expensive than it is from parties, most of the same type of information can still be obtained. For instance, a party might have to use a deposition to obtain the same information an interrogatory might have revealed. *See* Fed.R.Civ.P. 30 and 33. Or, a party might be forced to obtain a subpoena ordering attendance at a deposition and commanding that the person to whom it is directed produce designated books, papers, or tangible things that could be obtained from a party by a request for production of documents. *See* Fed.R.Civ.P. 30, 34 and 45. A great number of factors, many of them regrettably unrelated to concepts of justice and fairness, influence the assessment of comparative fault. We are not convinced that the more generous discovery allowed from parties inevitably would result in a more favorable assessment.

**3.** The federal district judges in Kansas have consistently reached the same conclusion. *See, e.g., Baird, supra,* 535 F.Supp. at 1378; *Stueve, supra,* 457 F.Supp. at 750; *Greenwood v. McDonough Power Equipment, Inc.,* 437

■ Textron argues that in any event, the Federal Rules of Civil Procedure permit the inclusion of Fry and the United States as parties. According to Textron, if the federal rules are read liberally in light of the goals they were intended to promote, rules 14, 19, and 20 allow the joinder of immune parties solely for the purposes of discovery and the assessment of comparative fault. We disagree.

Fed.R.Civ.P. 14(a) provides in pertinent part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to him for all or part of the plaintiff's claim against him.*

(Emphasis added). On its face, rule 14 does not apply to Textron's claim. First, since Kansas has eliminated contribution and indemnity among joint tortfeasors in comparative negligence cases, *see Brown v. Keill, supra,* 580 P.2d at 874; *Kennedy, supra,* 618 P.2d at 798, no person could be liable to Textron for all or part of the plaintiff's claim against it. If there is no right to relief under the substantive law, impleader is improper. 6 Wright & Miller § 1446 at 248–50 (1971). Second, even if the state law were otherwise, the United States and Fry are immune from liability and therefore would not be subject to impleader.

We recognize, of course, that Textron no longer seeks indemnity or contribution from the immune parties; rather, it requests only that Fry and the United States remain parties for the purposes of discovery and assessment of comparative fault. It is well established, however, that impleader is proper only where the third-party defendant's liability is "in some way derivative of the outcome of the main claim." *United*

States v. Joe Grasso & Son, Inc., 380 F.2d 749, 751 (5th Cir.1967). *See also,* 6 Wright & Miller § 1446 at 246–48 (1971). Textron does not, and indeed can not, assert that Fry and the United States may be liable to it if the plaintiffs in the underlying suit are successful. Thus, the attempt to use rule 14(a) impleader requires that we force a conceptual square peg into a procedural round hole. We are unable to do so.

By holding that rule 14 can not be utilized here we in no way frustrate the purposes of the federal rules. The purpose of rule 14 is to "accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." *Goodrich, supra,* 701 F.2d at 130 (quoting *United States v. Acord,* 209 F.2d 709, 712 (10th Cir.), *cert. denied,* 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115 (1954)). In the instant case, the proportionate fault of all persons concerned can and must be determined in a single proceeding, no other person can be liable to Textron, and Textron will be liable only for its share of proportionate fault. We need not expand the interpretation of rule 14 to see that its purposes are served.

For similar reasons, rule 19 does not require that the United States and Fry be joined as defendants. The above discussion of Kansas law and the phantom party concept makes it clear that complete relief can be accorded among those already parties despite the absence of the United States and Fry as parties. Textron claims that without the broader discovery available from a party, complete relief can not be granted. We have found no cases which approve of the use of rule 19 simply to allow greater discovery, and we can discern no policy which such an expansion of the rule would promote. Nor does the United States or Fry claim an interest in the action

F.Supp. 707, 710–12 (D.Kan.1977), *aff'd,* 687 F.2d 338 (10th Cir.1982), *petition for cert. granted,* —— U.S. ——, 103 S.Ct. 3109, 77 L.Ed.2d 1365 (1982). In *Hardin v. Manitowoc-Forsythe Corp.,* 691 F.2d 449, 460 (10th Cir.

1982), though the issue in this case was not before us, this court specifically approved of the district court's interpretation of Kan.Stat. Ann. § 60–258a in *Greenwood, supra.*

such that "the disposition of the action in [their] absence may ... leave [Textron] ... subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations...." Fed.R.Civ.P. 19(a)(2). Simply stated, the United States and Fry are not indispensable parties to this action. *See Greenwood, supra* n. 3, 437 F.Supp. at 709–11.

Finally, we reject the contention that permissive joinder of the United States and Fry should have been allowed under rule 20. First, we agree with the trial court that joinder of defendants under rule 20 is a right belonging to plaintiffs, and only when a right to relief is asserted against each defendant. Here, no right to relief could be asserted against the United States and Fry. Further, while rule 20 might be read in conjunction with rule 14 to allow the joinder of several third-party defendants, a defendant can not use rule 20 to join a person as an additional defendant. Rule 19 is available if an action should not proceed without a particular person as a defendant, but the requirements of that rule are not met here. Second, without intimating that rule 20 is available to defendants, we note that in any event the rule is permissive; whether to allow such joinder is left to the discretion of the trial judge. Since the fault of all persons, parties or not, will be compared, and since Textron will be liable only for its share of fault, there was no abuse of discretion here.

### The State of Kansas and the Kansas Army National Guard

The above analysis applies with equal force to Textron's claims against the State of Kansas and KANG. We first note that we have already concluded that KANG is an arm of the state and is entitled to the immunity afforded by the Eleventh Amendment. Further, we note that since the actions giving rise to this suit took place before the effective date of the Kansas Tort Claims Act, the state and KANG are im-

mune from suit. *Hendrix, supra,* 643 P.2d at 132; Kan.Stat.Ann. § 75–6101(b) (1982 Supp.). Textron's claim that a suit seeking discovery and assessment of comparative fault is not barred by the Eleventh Amendment is answered by the analysis of the claims against the United States and Fry: even if we assume such a suit is not barred by the Eleventh Amendment, there is no procedural mechanism by which the state and KANG may be made parties, nor is it necessary for them to be made parties to litigate fully the issues in this case.

Textron additionally argues, however, that by enacting Kan.Stat.Ann. § 60–258a(c), *supra,* the state waived its Eleventh Amendment immunity with respect to suits for the assessment of comparative fault. As support for this proposition, Textron cites *Wilson v. Probst, supra,* 581 P.2d at 384, where the Kansas Supreme Court stated: "An additional party defendant in a comparative negligence action may not be dismissed from an action solely because of his immunity." Again, even if we assume that the state has consented to this type of suit in federal court, the Federal Rules of Civil Procedure, as discussed above, provide no mechanism for bringing the state into this suit as a party, and section 60–258a(c) is not binding on the federal courts.[4]

### Conclusion

We hold that the summary judgment in favor of the United States, Major General Edward Fry, KANG, and the State of Kansas was properly granted. By this decision, we do not blindly adhere to the doctrines of *Feres* and *Stencel,* and sovereign immunity in general. Nor do we encourage rigid or restrictive interpretations of the Federal Rules of Civil Procedure. In the instant case, Kansas law well protects Textron from the potentially harsh results the doctrine of sovereign immunity may create, and even the most liberal reading of the Federal Rules of Civil Procedure would do little to promote more efficient administra-

---

**4.** It is true that if this suit had been brought in state court, Textron apparently would be able to join the State and KANG under section 60–258a(c). The outcome of the case, though, would remain the same: the proportionate fault of all persons, parties or not, would be considered, Textron would be liable only for its share of fault, and the state and KANG would be assessed proportionate shares of fault, but, because of their immunity, they would not be held liable to the plaintiffs or Textron for money damages.

tion of justice in this case. At best, a different holding by this court would permit more convenient and nominally broader discovery by Textron. In all other respects, save speculative differences in the proportionate fault assigned to the various actors in this action, the result eventually obtained in this case will be exactly the same as it would be were we to remand the case and order the district court to join the appellees as parties.

AFFIRMED.