**Charles D. CROSS, Plaintiff,**

v.

**Roger D. FISCUS, et al., Defendants.**

**No. 86 C 3810.**

United States District Court, N.D. Illinois, E.D.

March 17, 1987.

---

Bickley and Bickley, Chicago, Ill., Lt. Col. Keith Sefton, U.S. Navy, Office of the Judge Advocate General, Washington, D.C., for plaintiff.

Frederick Branding, U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This case is before us on the defendants' motion to dismiss. For the reasons stated below, the motion to dismiss is granted because the defendants are immune from suit.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff Charles D. Cross is a Lieutenant Colonel in the United States Marine Corps. He has served in the Corps for 17 years. In 1983, plaintiff was transferred to 2d Battalion, 24th Marine Regiment of the 4th Marine Division (Reserve) in Chicago, where he took command as "Inspector-Instructor." Complaint at ¶ 5. Plaintiff alleges that discipline at this facility had been lax and that plaintiff, upon assuming command, acted to implement "strict compliance with Marine Corps regulations." *Id.* at ¶¶ 6–7. Defendants Roger D. Fiscus, Donald Rathburger, and Jessie Hicks were noncommissioned officers (gunnery sergeants) stationed at the Chicago facility. Allegedly "chafing under the limits of discipline" imposed by the plaintiff, defendants "conspired" to libel and slander him so as to force an investigation of plaintiff's command by his superiors and oust him as their commander. *Id.* at ¶¶ 9–10. Plaintiff claims that as a direct result of the slanderous statements and the "conspiracy" to slander him, he was transferred, relieved of his command, and "has had his 17 year career as a professional Marine, completely ruined, promotional prospects drastically diminished, and had his entire career placed in jeopardy." *Id.* at ¶ 19.

Plaintiff filed this action in Cook County Circuit Court in April 1986. Defendants removed to this court and have moved to dismiss the complaint on two distinct grounds of immunity: the intraservice tort immunity doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); and the absolute common law tort immunity for federal officials. We consider the *Feres* argument first.

## DISCUSSION

### Intraservice Tort Immunity—The *Feres* Doctrine

In *Feres,* the Supreme Court ruled that a soldier could not recover under the Federal Tort Claims Act for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at

159. *Feres* immunity has been routinely extended to officers and other servicemen as well as to the United States. *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1491 (10th Cir.1983); *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1152 (5th Cir.1981). Plaintiff argues that *Feres* is inapplicable because defendants' actions were not "in incidence to their service" nor would they "affect the continued discipline of the Armed Forces of the United States." Plaintiff's Memorandum in Opposition at 5.

■ It is true, as plaintiff contends, that *Feres* should not be applied "mechanically" in making the determination as to whether defendants' actions were "incident to service." Yet we believe that on the facts as alleged, there is no doubt that *Feres* governs. In *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the government was sued when Shearer, an off-duty soldier away from his base, was kidnapped and murdered by another serviceman, Heard. Plaintiff, the mother of the murdered soldier, claimed that the Army negligently failed to control Heard even though the Army knew of his record for manslaughter. The Court ruled that the Army's handling of Heard was a "decision of command" subject to *Feres* immunity, stating:

> The *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases. Here, the Court of Appeals placed great weight on the fact that Shearer was off duty and away from the base when he was murdered. But the situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military de-

cisions ... and whether the suit might impair essential military discipline.

105 S.Ct. at 3043.

Plaintiff argues that defendants' conspiracy to harm the plaintiff was unconnected to their official duties. Yet lodging complaints with superior officers and initiating an investigation are clearly "incident to military service," no matter what defendants' ulterior motive.[1] Plaintiff states that the defendants slanderously accused him of appropriating government funds, profiteering by forcing sales of clothing to his subordinates, and lying to his superiors about the defendants' complaint. Complaint at ¶ 12. All of these statements related to plaintiff's performance of his command duties and are clearly "incident to service" under *Feres* and *Shearer*.

■ The purpose of *Feres* is to prevent civilian courts from interfering with the existing structure of military discipline. Trying this case in this court would constitute such an interference. If the defendants' action had in fact been baseless and conspiratory, the 545-page military investigation, compiled with testimony from 20 witnesses, should have borne this out. However, the investigating officer recommended nonjudicial punishment for plaintiff and that he be relieved of his duty as Inspector-Instructor, indicating that defendants' statements may have had some limited merit—although the officer did state that he did not believe all the information supplied by defendants and recommended their reassignment from Chicago.[2] To deny immunity would subvert the decisionmaking process of the investigating officer; allowing a claim for slander would permit those dissatisfied with the results of military discipline proceedings to hale servicemen into civilian courts and severely hamper the existing disciplinary system.

---

1. Plaintiff claims that defendants triggered the investigation through anonymous calls to the Department of Defense (DOD) "Hotline," a phone number that "any disgruntled person may use to call, anonymously, the Department of Defense and register a complaint of sorts." Plaintiff's Memorandum in Opposition at 3. Plaintiff alleges that the Hotline system is the subject of widespread abuse. Complaint at ¶ 8.

2. The Commanding General did not follow the recommendations of the investigating officer; although plaintiff was reassigned to Washington, D.C., he was not given "nonjudicial punishment." The recommendation of reassignment for defendants was also not carried out by the Commanding General. Defendants' Memorandum in Support at 2.

As a result, we rule that defendants are immune from suit under *Feres*.[3]

### Common Law Immunity

██ Even if *Feres* did not immunize defendants from suit, federal officials have absolute immunity from all common law tort claims arising from actions within the "outer perimeter" of their lines of duty. *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). Realizing that officials might otherwise be subject to time-consuming and harassing litigation that could inhibit "the fearless, vigorous, and effective administration of the government," the *Barr* court determined that absolute immunity for such officials was the appropriate policy. *Id.* at 571, 79 S.Ct. at 1339. Even "lower echelon" officials such as the defendants in this case are protected from suit by *Barr*. *Oyler v. National Guard Association of United States*, 743 F.2d 545, 553 (7th Cir.1984).

██ Plaintiff argues that because defendants initiated the dispute by complaining about plaintiff to his superiors, those actions do not fall "within the outer perimeter of their Federal responsibilities," as the defendants had no affirmative duty to "create" a conspiracy to get rid of plaintiff. Plaintiff's Memorandum in Opposition at 12, 14. Yet the possibility that defendants had malicious purposes is unimportant. "The immunity is absolute no matter the motive for the slander—preventing an inquiry into motive is one of the principal reasons for making the immunity *absolute*." *Carson v. Block*, 790 F.2d 562, 566 (7th Cir.1986) (emphasis in original). Further, we think that the protection afforded by *Barr* is even more important to the federal official who has "stuck his neck out" in making a statement on his own initiative. Reluctance to report misconduct for fear of job reprisals would be increased if officials had no immunity. The chilling

effect feared by the *Barr* Court is even larger when the federal official has no affirmative duty to speak out—he may well decide to play it safe by keeping silent and not risk litigation.

*Araujo v. Welch*, 742 F.2d 802 (3d Cir. 1984), provides no support for plaintiff. In that case an Army general physically abused and verbally assaulted his civilian employee at a job-related banquet. The court ruled that although the general's actions were within his discretion as an officer, physical abuse was unnecessary in this instance and thus beyond the "outer perimeter" of his duty. *Id.* at 806. However, the court held that *Barr* immunized the general from suit for the "verbal abuse" alleged by the employee. In the instant case, plaintiff has alleged no physical abuse taking defendants beyond the outer perimeter of their military duties. The alleged falsity of the statements cannot preclude the defendants' absolute immunity from a slander suit under *Barr*.

### CONCLUSION

Defendants' motion to dismiss is granted as they are immune from suit.

---

3. *Atkinson v. United States*, 804 F.2d 561 (9th Cir.1986), to which plaintiff refers us in his letter filed December 23, 1986, is entirely distinguishable. The *Atkinson* court ruled that *Feres* did not immunize Army medical personnel from malpractice suits, holding that allowing such litigation would not interfere with internal military discipline. The court stated that no command relationship existed between Atkinson and her Army physician and that there is "simply no connection between Atkinson's medical treatment and the decisional or disciplinary interest protected by the *Feres* doctrine." *Id.* at 565. In contrast, allowing a slander suit in the instant case would directly interfere with the disciplinary decision made during the investigation.