**Charles D. CROSS, Plaintiff-Appellant,**

v.

**Roger D. FISCUS, Donald Rathburger, and Jessie Hicks, Defendants-Appellees.**

**No. 87–1548.**

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 11, 1987.

Decided Sept. 25, 1987.

John H. Bickley, Jr., Bickley & Bickley, Chicago, Ill., for plaintiff-appellant.

Lt. Col. Keith Sefton, U.S.M.C. Dept. of Navy, Office of Judge Advocate Gen., Alexandria, Va., Frederick H. Branding, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Enlisted men often say nasty things about officers behind their backs. Military discipline forbids many kinds of challenges to the authority of officers, and even the permitted challenges have their risks. The military services allow people to go over the heads of their commanding officers to complain of wrongdoing, real or imagined. Roger Fiscus, Donald Rathburger, and Jessie Hicks, three gunnery sergeants of the 4th Marine Division (Reserve) stationed in Chicago, complained about the conduct of Lt. Colonel Charles Cross, the commanding officer of its 2d Battalion, 24th Regiment. They took the risk that Cross's superiors would absolve him of wrongdoing and think ill of them for making unfounded complaints. Instead the superior officers removed Cross from his command, although they declined to impose other discipline. Cross retaliated with a suit accusing the sergeants of defamation. We must decide whether litigation in the civil courts is among the risks the sergeants assumed when they lodged their protest. The risk of litigation filed by a superior officer is slight compared with the risks to which officers may expose their men in combat, but it is unwarranted nonetheless.

Cross based his claim on state law and filed the suit in state court. Invoking the diversity jurisdiction, the United States Attorney (representing the sergeants) removed the case to federal court. The district judge dismissed the complaint under Fed.R.Civ.P. 12(b)(6), holding the sergeants immune from suit under the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). See 661 F.Supp. 36, 37–39 (N.D.Ill.1987). The court also held the sergeants absolutely immune from liability under the principles of *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). See 661 F.Supp. at 39. We agree with the second ground but not the first.

It is essential to match immunities with potential sources of liability. An immunity against one ground of liability may not work against another; often the rationale of the immunity is linked closely to the rationale of liability. Thus it promotes understanding to start with the theories of liability. Two theories of the sergeants' liability potentially are in play here: the state law of defamation, and the "constitutional tort" doctrine of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). If Col. Cross had sued the United States, this would have brought the Federal Tort Claims Act into the picture. Each of these three theories of liability has corresponding limitations and defenses, which should not be confused.

Start with the last, the FTCA, which has not been pleaded. The FTCA has some built-in limitations. Most appear in the text of the statute. One limitation has been added by implication from the structure and legislative history of the Act: military personnel may not collect damages from the United States for injuries arising out of conduct incident to service. This is the *Feres* doctrine, restated most recently in *United States v. Johnson*, — U.S. —, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). As these cases explain, the limitation on liability is not an "immunity". It is based on a conclusion that the FTCA does not extend in the first instance to certain injuries.

The FTCA applies only to the United States, while *Bivens* authorizes suits against employees of the United States. The *Bivens* doctrine has a limited scope; sometimes statutory or prudential considerations make the implication of a private right of action directly from the Constitution unwise. E.g., *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (no *Bivens* action for federal employees who have remedies under the civil service laws). When a *Bivens* action is available, a series of qualified and absolute immunities may be set up in defense. See *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (discussing earlier cases). Military personnel need not worry about these immunities when sued by other members of the military, however, because the *Bivens* doctrine does not apply to injuries in the course of military service. *United States v. Stanley*, — U.S. —, 107 S.Ct. 3054, 3062, 97 L.Ed.2d 550 (1987); *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). The doctrine of *Stanley* and *Chappell* tracks *Feres* in two ways: it holds that there is no claim for relief (making immunities irrelevant), and it covers roughly the same scope (injuries incident to military service). But its source is different. *Feres* is a construction of a statute. *Stanley* and *Chappell* are constructions of the Constitution based on considerations similar to those that, the Court believes, influenced Congress when enacting the FTCA. If Congress amended the FTCA, the principles of *Stanley* and *Chappell* would be unaffected—though Congress could create a federal remedy against service personnel by passing a separate statute.

*Stanley* and *Chappell*—not to mention *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which holds that libel does not violate the due process clauses of the Constitution—would make a *Bivens* action pointless. So Cross based his suit wholly on the law of Illinois. Does he have a claim? The parties have neglected this question, logically the first. Unless state law creates a claim, federal defenses are unimportant. We must assume, given the posture of the case, that the sergeants

said some derogatory things about the colonel, and impugning competence in one's job is presumptively defamatory. But every state makes an exception of some kind for communications to one's employer about a fellow worker, on the ground that the risk of liability would induce employees to keep an unfortunate silence. See Prosser & Keeton, *Torts* § 115 at 827, 830–31 (5th ed. 1984); cf. *Perry v. FBI*, 781 F.2d 1294, 1304–05 (7th Cir.1986) (en banc) (concurring opinion). As the parties have overlooked the subject, we do not explore it further. We also put to the side one potential source of immunity—the sergeants' first amendment privilege to petition the government for redress of grievances. See *McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). This, too, the parties have bypassed.

*Barr* supplies an absolute immunity against liability for defamation under state law, when the defamation occurred while the federal employee was acting within the "outer perimeters" of duty. 360 U.S. at 575, 79 S.Ct. at 1341; see also *Harlow v. Fitzgerald*, 457 U.S. 800, 807–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982) (dictum); *Butz v. Economou*, 438 U.S. 478, 494–95, 98 S.Ct. 2894, 2904–05, 57 L.Ed.2d 895 (1978); *Howard v. Lyons*, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); *Carson v. Block*, 790 F.2d 562, 565–66 (7th Cir.1986). We are among the courts holding that this immunity extends to all federal employees, see *Oyler v. National Guard Ass'n*, 743 F.2d 545, 553 (7th Cir.1984), while some other courts hold that only policy-making officials are entitled to it, e.g., *Araujo v. Welch*, 742 F.2d 802, 804 (3d Cir.1984). There is also a long-standing dispute about where the "outer perimeters" of duty may be found. We have followed Learned Hand in affording immunity when "the occasion ... would have justified the act, had [the federal employee] been using his power for any of the purposes on whose account it was vested in him." *Carson*, 790 F.2d at 565, quoting from *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949). See also *Scherer v. Brennan*, 379 F.2d 609, 611 (7th Cir.1967). Other courts have been stingier. Questions

about the persons entitled to immunity and the location of the "perimeters" of duty are before the Supreme Court in *Erwin v. Westfall*, 785 F.2d 1551 (11th Cir.1986), *cert. granted,* — U.S. ——, 107 S.Ct. 1346, 94 L.Ed.2d 517 (1987).

Although the district court treated *Feres* and *Barr* as functionally identical, this recap shows that they are dissimilar. *Feres*, *Stanley*, and *Chappell* focus on the connection between the *plaintiff* and the military, in order to carry out the plan of Congress and prevent undue disruption of the military chain of command; *Barr* and other immunities focus attention on the connection between the particular tort and the *defendant's* official duties, in order to prevent deterring federal employees from the fearless execution of their duties. *Stanley* rejected an analogy to doctrines of immunity, see 107 S.Ct. at 3064, precisely because the details of immunity doctrines have evolved to address a set of questions different from those presented by *Feres* (for FTCA purposes) and *Stanley* (for *Bivens* purposes). *Feres* prevents a military plaintiff from recovering against the United States, even if a civilian committed the tort in question. See *United States v. Johnson, supra.* We do not suppose, however, than any doctrine of federal immunity would prevent Col. Cross from recovering against a civilian who defamed him in order to hinder his career. If one soldier stabs another, the victim may not recover from the United States under the FTCA, see *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), but the victim may recover from the aggressor personally. Cf. *Araujo*, 742 F.2d at 806.

█ It should be clear by now why we do not join the district court, and several other circuits, see *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1490–92 (10th Cir.1983) (collecting cases), in transferring the principles of *Feres* to tort litigation among military personnel. The principles of *Feres* (and *Stanley*) have sources and boundaries removed from the principles of immunity that should govern. We do not necessarily disagree with the result of any of the cases in which our fellow circuits have applied

*Feres* to private tort litigation, but the difference in approach could matter in future cases. *Hefley* and similar cases predate *Chappell* and *Stanley;* perhaps those decisions will induce our fellow circuits to reconsider their position.

At all events, the difference between *Feres* and *Barr* does not matter here, at least if this court's treatment of immunity prevails in *Westfall.* The sergeants are not policy-making employees of the Marines, and gunnery sergeants do not regularly evaluate the conduct of their superior officers; nonetheless, providing such evaluations within the chain of command is among the privileges of enlisted personnel. U.S. Navy Regulations Art. 1139 (1973). Higher officers are entitled to know—if it is true—that an officer is not behaving properly. That enlisted personnel may provide misinformation rather than the truth does not contract the scope of their duties, under the approach of *Gregoire.* On the sole ground of absolute immunity, the judgment is

AFFIRMED.