Woodrow BROWN, Plaintiff,

v.

COUNTY OF WESTCHESTER, Westchester County Correctional Officer Harry Bannister (#4260), Westchester County Correctional Officer Carmen (#82), Westchester County Correctional Captain "John Doe," Defendants.

Harry BANNISTER, Plaintiff,

v.

CITY OF YONKERS, Yonkers Police Department, Police Officer Brown, Police Officer John Doe, Defendants.

Nos. 93 Civ 2700 (VLB),
92 Civ 8367 (VLB).

United States District Court,
S.D. New York.

Dec. 22, 1993.

James I. Meyerson, New York City, for plaintiff Brown.

Barbara F. Sukowski, Asst. County Atty., White Plains, NY, for defendants in No. 93 Civ 2700.

Michael H. Sussman, Goshen, NY, for plaintiff Bannister.

Philip M. Aglietti, Associate Corp. Counsel, Yonkers, NY, for defendants in No. 92 Civ 8367.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

These cases present the question of the proper response of the federal courts when a police officer and a correction officer sue each other in separate lawsuits based on events involving the conduct of each while on duty.[1]

### II

Plaintiff Woodrow Brown ("Brown"), a Yonkers police officer, participated in an arrest of the defendant Harry Bannister ("Bannister") a Westchester County Correction Officer who was then off duty, in July of 1990. Bannister and another person, both of whom had been drinking, were stopped while driving and detained for approximately three hours before being released. All charges against Bannister were dropped. Bannister thereafter brought suit in this court (92 Civ 8367 [VLB]) under 42 U.S.C. 1983 against Brown and the City of Yonkers (a claim against the Westchester District Attorney's Office was subsequently dropped). In that case discovery is complete.

On February 24, 1993 Brown, in uniform and acting as a police officer, brought a prisoner to the Westchester County Correc-

tional Facility at Valhalla, New York. According to the complaint in 93 Civ 2700 (VLB), Bannister and other correctional officers detained Brown for approximately two hours for unknown reasons. No personal injuries, arrest, search, handcuffing or other untoward events affecting Brown ensued. The correctional officer did use foul language.[2]

Brown subsequently filed the complaint in 93 Civ 2700 against Bannister, the County of Westchester, another correction officer and an unknown correction officer based on 42 U.S.C. 1983 and various state statutory provisions, basing jurisdiction on 28 U.S.C. 1331 and the supplemental jurisdiction over related claims authorized by 28 U.S.C. 1367. The County of Westchester has moved to dismiss Brown's claims against it on the ground that nothing is alleged establishing its responsibility; Brown has cross-moved for production of defendants' personnel records.[3]

The matters outlined below are to be considered before these motions are decided.

### III

The judiciary at federal and state levels was characterized in *The Federalist* No. 82 (Hamilton) as "ONE WHOLE" (capitalization in original). The same is true to a large extent with regard to municipal, county and federal law enforcement (including correctional) personnel, all of whom are sworn to seek to protect the public to the best of their ability. This objective is, indeed, suggested by the Preamble to the Constitution, which refers to "domestic Tranquillity" as one of its purposes.[4]

---

1. The use of a combined caption does not constitute a consolidation of the cases. It serves as a convenience in the issuance of this memorandum order, which pertains to each of the cases in the caption.

2. Had personal injuries been incurred, recompense provided by the employer could have been invoked by Brown, and had additional hours been taken from Brown's personal time, overtime for the hours expended could have been requested from his agency (the Yonkers Police Department). It is unlikely that insults to a presumably streetwise law enforcement officer will support a substantial damage claim. *Batista v. Rodriguez*, 702 F.2d 393, 398 (2d Cir.1983);

see *Memphis Community School District v. Stachura*, 477 U.S. 299, 310–11, 106 S.Ct. 2537, 2544–45, 91 L.Ed.2d 249 (1986)

3. While I do not rule on this motion to inspect at this time, I note that the authorities cited by the applicant appear consistent with initial *in camera* inspection if a need for confidentiality is articulated; the need for inspection may also be related to the seriousness of the injury asserted.

4. See *Jackson v. Senkowski*, 817 F.Supp. 6 (S.D.N.Y.1993); Handler, Leiter & Handler, "A Reconsideration of the Relevancy and Materiality of the Preamble in Constitutional Interpretation," 13 Cardozo L.Rev. No. 1 at 117 (Oct. 1990).

Lawsuits by law enforcement personnel against other law enforcement personnel, in connection with loss of time or insults experienced while on duty, present obvious threats to discipline, to cooperation in the common endeavor, and to public support for law enforcement personnel. An analogy may be drawn—it will be obviously be far from complete—to the question of lawsuits by members of the military services against each other; they are prohibited. See *Cross v. Fiscus*, 830 F.2d 755, 756 (7th Cir.1986) ("Military personnel need not worry ... when sued by other members of the military.").

In the military as in law enforcement, loss of duty time due to bad judgment, or to improperly motivated decisions by others including the use of insults and unfortunate language, are annoyances which must be accepted as part of the job. Although true professionalism disfavors unnecessary use of objectionable language or wasting the time of others, adherence to appropriate standards is ordinarily sought through internal disciplinary measures, not by resort to the courts. The adage that one who cannot stand the heat should get out of the kitchen may at times be apt.

In some circumstances, lawsuits between governmental agencies, even at the same level of government, are permitted, as when employment-related agencies litigate with operating agencies concerning employment matters. Personal lawsuits by employees of one state governmental agency against employees of another state or governmental agency involving matters within the scope of their duties runs counter, however, to the concept that the Executive agency heads are the ones charged with administering the agencies involved.

At the federal level, congressional concern has been expressed that "exposure of Federal employees to personal liability could lead to a substantial diminution in the vigor of Federal law enforcement and implementation." H. Rep. 700, 100th Cong., 2d Sess (1988), 1988 U.S.Code Cong. & Admin.News 5974, recommending enactment of what became the Federal Employees Liability Reform and Tort Compensation Act, Public Law 100–674, 102 Stat. 4564, adopting 28 USC 2679(b).

## IV

The authority of law enforcement supervisors is eroded if their subordinates sue officers of other agencies because of differences concerning how each agency's personnel should relate to members of sister agencies. While litigation is necessary to protect employees from actionable abuse, the importance of avoiding destruction of policymaking functions through inappropriate use of litigation has long been recognized. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Watkins v. McConologue*, 820 F.Supp. 70 (S.D.N.Y.1992), *aff'd without opinion* 978 F.2d 706 (2d Cir.1992) (public sector); see also *McGrane v. Reader's Digest*, 822 F.Supp. 1044 (S.D.N.Y.1993) (private sector).

## V

The pending litigations are not the optimal means of dealing with these inter-law enforcement officer disputes, most particularly in the instance of 93 Civ 2700 where on-duty conduct of both officers was involved.

The parties are directed to furnish copies of this memorandum order and the complaints in these cases to the chief executives of the Yonkers Police Department and the Westchester County Correctional Facility. I have every confidence that these officials will consult with each other and find appropriate means of resolving, or promoting the resolution of, the pending disputes, in the public interest and with appropriate attention to the needs of their respective personnel.

## VI

The importance of collegiality and cooperation within the law enforcement community extends beyond the formal duties of supervisory level personnel. It extends through the ranks, including segments represented by trade union and other internal associations based on ethnic, religious and numerous other factors. The leaders of all of these organizations, like the heads of the respective agencies the employees of which are involved

in the current litigation, have interests which are affected by disputes of this type. Such disputes are detrimental to the reputation of law enforcement officers generally and to the good working relationships ultimately essential to their duties. The parties are urged, therefore, to invoke the participation of such organizations in attempting to resolve the issues present in these litigations.

## VII

The parties are directed to inform me within 60 days of the date of this memorandum order, of the outcome of these efforts to resolve extra-judicially the disputes involved in these litigations. If the disputes are not resolved, further steps in these litigations will then be considered. Such steps may include:

(a) reactivation of Westchester County's motion to dismiss the complaint in 93 Civ 2700 for lack of municipal liability;

(b) application of the court's power under *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) to require each party to come forward with necessary evidence to establish that there is a genuine issue of material fact with respect to the various claims and defenses;[5]

(c) consolidation of the claims in 93 Civ 2700 by Brown against Bannister, with those brought by Bannister in 92 Civ 8367, to the extent such claims have survived, treating the claims in each as permissive or compulsory counterclaims pursuant to Fed.R.Civ.P. 13, to be determined prior to consideration of any surviving questions of liability of any institutional entities remaining in the litigation;

(d) arbitration or mediation, or a direction that the parties meet with appropriate agencies to discuss various means of resolution;

(e) placement of these cases on my suspense calendar pending further settlement efforts arranged by the parties.

## VIII

In the event that resolution is not achieved within 90 days of the date of this memorandum order, all parties then remaining in the case are directed to submit memoranda of law concerning whether a requirement of actual injury to the complaining party above a *de minimis* threshold is necessary to obtain other than prospective equitable relief under the sources of law applicable in this case. See *Olympia Equipment Leasing v. Western Union*, 797 F.2d 370, 383 (7th Cir. 1986) (no basis for assuming or quantifying damages).

In this connection, the parties should address whether or not the events alleged in these cases concern damage which may be real but nonetheless difficult to quantify or whether any such damages are inherently minimal in the current context. *Memphis Community School District v. Stachura*, 477 U.S. 299, 310–11, 106 S.Ct. 2537, 2544–45, 91 L.Ed.2d 249 (1986); *Suss v. ASPCA*, 823 F.Supp. 181, 191 (S.D.N.Y.1993). The parties may wish to consider whether or not harm to interests protected by statute or by the Constitution of the United States require, in the context of this case, monetary rather than merely potential prospective relief, even if significant actual harm to a party cannot be calculated. See *Gonzalez v. St. Margaret's House Housing Development Fund*, 880 F.2d 1514, 1518 (2d Cir.1989). The parties should also consider the distinction between standing to sue and ability to secure monetary damages. See *Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991).

## IX

Pending further order based upon the reports to be made by the parties within 90

---

5. The parties should consider the potential role of alcohol, if any, in the events alleged in 92 Civ 8367, and the potential applicability of *in pari delicto*, comparative fault or shared responsibility under one or more legal doctrines as a barrier to damages, but not necessarily to equitable relief. See *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *Isaksen v. Vermont*

*Castings*, 825 F.2d 1158 (7th Cir.1987); *General Leaseways v. National Truck Leasing Ass'n*, 744 F.2d 588 (7th Cir.1984); *Suss v. ASPCA*, 823 F.Supp. 181, 191 (S.D.N.Y.1993); *TIAA v. Coaxial Communications*, 799 F.Supp. 16 (S.D.N.Y. 1992), *later decision* 807 F.Supp. 1155 (S.D.N.Y. 1992).

days from the date of this memorandum order, all discovery in 93 Civ 2700 is stayed and all pending motions are denied without prejudice to renewal if necessary.

SO ORDERED.