USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1727

 ANDREW DAY,

 Plaintiff, Appellant,

 v.

 MASSACHUSETTS AIR NATIONAL GUARD,
 UNITED STATES DEPARTMENT OF THE AIR FORCE,
 JAMES DUCLOS, RICHARD DUQUETTE, JAMES TOWLE,
 DUANE CATON, JAMES BALISLE, AND JOHN DOES 1-8,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Michael A. Ponsor, U.S. District Judge]

 Before

 Boudin, Lynch, and Lipez, Circuit Judges.
 
 

 Daniel E. Bruso with whom Mark D. Mason and Cooley, Shrair
P.C. were on brief for appellant.
 Karen L. Goodwin, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for
appellees.

January 29, 1999

 
 
 BOUDIN, Circuit Judge. This case presents uncommonly
difficult questions as to whether a serviceman, subject to assault
and battery in an on-base hazing incident properly described by the
district court as "despicable," may recover damages from the
government or from military personnel variously connected to the
attack. The district court ruled that the claims were barred by
the doctrine of Feres v. United States, 340 U.S. 135 (1950),
limiting suits for injuries arising "incident to military service." 
Id. at 146. Day v. Massachusetts Air Nat'l Guard, 994 F. Supp. 72
(D. Mass. 1998). We affirm in part and reverse in part.
 Because the complaint was resolved on motions to dismiss,
the facts are set forth as alleged in the complaint and inferences
are taken in the light most favorable to the non-moving party. SeeDartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir.
1989). That party is the plaintiff in the district court, Andrew
Day, who at the time of the alleged incident was an enlisted airman
of the Massachusetts Air National Guard, holding the rank of senior
airman/E-4. In July 1994, Day was serving with the 104th Fighter
Group and was assigned to participate in a training exercise at
Volk Field in Wisconsin.
 During this exercise, Day says that he saw other members
of the 104th subjected to repeated instances of severe hazing; for
example, Day claims that in one case other airmen ripped off the
clothes of a member of the 104th, duct taped the naked victim to
his bed, and left him outside subject to public ridicule. Day also
alleges that the officers and non-commissioned officers did nothing
to halt the attacks. Day also says that he was warned by several
men, including several of the later defendants, that he would be
the victim of similar attacks.
 The incident that gives rise to the lawsuit occurred on
July 22, 1994. According to the complaint later filed by Day,
after his release from duty on July 21, he went to a party at the
Base Club at Volk Field together with other members of the 104th. 
Day left the party at 1 a.m. on July 22, 1994, returned to his
barracks on the base, and went to sleep. Day says that he asked
Richard Duquette, apparently the senior enlisted man on the scene,
whether Day would be attacked and was assured he would not be
attacked that night.
 Nevertheless, during the night Day was awakened by
several individuals; these including serviceman (and later
defendant) James Towle and others whom Day was unable to identify
(but are listed in the complaint as John Does 1 through 8). These
men stripped Day, carried him outside, forced him to kneel on the
ground with his stomach across a bed set up outside the barracks
and--pouring an unknown liquid between Day's buttocks--forcibly
inserted a traffic cone between them. Another defendant,
serviceman Duane Caton, allegedly took photographs.
 The complaint alleges without detail that Duquette aided
and abetted the attack. Duquette's own version, which the military
apparently accepted, was that he was the one who broke up the
attack. James Balisle and James Duclos, the remaining individuals
eventually named in the subsequent complaint, were not alleged to
have directly participated in the attack; it was Day's theory that
Balisle and Duclos were implicated because they had negligently
supervised others.
 On July 19, 1996, Day filed his present damage claim in
the district court, naming as defendants the Massachusetts Air
National Guard, the U.S. Department of the Air Force, five named
individuals (Duquette, Towle, Caton, Balisle and Duclos), and John
Does 1 through 8. The complaint asserted against the defendants a
federal civil rights claim under 42 U.S.C. 1983 and/or a host of
state claims for civil rights violations under state law, M.G.L.
ch. 12, 11I, and for assault, battery, intentional and negligent
infliction of emotional distress, and negligent enlistment and
supervision.
 Acting under the Westfall Act, the United States Attorney
certified that Duquette, Duclos and Balisle had been acting within
the scope of their office or employment "at the time of the
incident out of which the claim arose." 28 U.S.C. 2679(d)(1). 
The effect of certification is to substitute the United States as
defendant on certified claims and protect the individual from
liability as to such claims. Id. 2679(b)(1), (d)(1). The U.S.
Attorney declined to certify the claims against Towle or Caton
under the Westfall Act.
 Thereafter, the district court in a thoughtful decision
dated February 12, 1998, dismissed all claims against all
defendants under the Feres doctrine. The court concluded that even
as to deliberate injuries, the injuries alleged by Day were
"incident to military service" based primarily on Day's duty
status, the on-base location of the injuries, and the liability of
the wrongdoers to military discipline. See Day, 994 F. Supp. at
77-80. The court upheld the certifications by the U.S. Attorney
and rejected Towle's claim that he also should have been certified
(Caton defaulted and did not challenge the denial). Id. at 76.
 On this appeal by Day, the central questions are whether
the Feres doctrine applies; if so, whether it bars his claims
against the individual servicemen named as defendants; and to the
extent it does not whether claims against individual defendants
were properly certified under the Westfall Act. These are
primarily questions of law, which we decide de novo, the facts
alleged in the complaint being taken as true. See United States v.
Omar, 104 F.3d 519, 522 (1st Cir. 1997). We conclude that Feres 
bars federal claims against all defendants and state claims against
the United States and its components but does not bar state claims
against individual servicemen for conduct outside the scope of
their duties. We also uphold the district court's decisions as to
the Westfall Act to the extent that they are challenged.
 Starting with Feres, the clearest way to approach this
issue is to consider whether Feres's incident to service test bars
Day's claims against the federal government and its components, as
the district court held. Although Day's asserted aim on appeal is
to secure relief only against certain of the individual defendants
and not the government, his argument rests in part on his
interpretation of the Feres rationale and the factors ordinarily
considered under Feres. In any case, Feres and its proper
application is the building block on which the balance of the
analysis must rest.
 As sovereign, the United States may not be sued for
damages without its consent. See Murphy v. United States, 45 F.3d
520, 522 (1st Cir. 1995). The United States has consented, in the
Federal Tort Claims Act, 28 U.S.C. 2671 et seq., to be sued for
damages for personal injury caused by "the negligent or wrongful
act or omission" of a federal employee "while acting within the
scope of his employment," provided that in the same circumstances
a private employer would be liable for the acts of his employee
under the local law. 28 U.S.C. 1346(b), 2674, 2675(a). No
explicit exception bars claims by or against military personnel.
 Nevertheless, in 1950 the Supreme Court determined in
Feres that the Federal Tort Claims Act did not extend to a suit by
a deceased soldier's estate for negligent medical treatment by army
surgeons resulting in the soldier's death. See 340 U.S. at 145-46. 
Using the like-circumstances language of section 2674(a) as a
point of departure, Justice Jackson said that no precedent allowed
a soldier to recover for negligence against his superiors or his
government, and his opinion offered policy reasons against such
recovery. See id. at 141-42. He concluded that the statute did
not extend to suits for "injuries to servicemen where the injuries
arise out of or are in the course of activity incident to service." 
Id. at 146.
 Writing in the aftermath of the Second World War, Justice
Jackson likely thought that Congress (which had only recently
enacted the Federal Tort Claims Act) did not mean to subject itself
to negligence claims by every soldier injured in the line of duty
or to open military decisions to second-guessing by civilians. SeeFeres, 340 U.S. at 141-142. In an age of modest tort judgments,
the loss of a tort claim was balanced by the assurance of free
medical care and veteran's benefits for an injured soldier. Seeid. at 144-45. The prospect of disparate state law governing tort
liability for the military looked ominous. See id. at 143. In all
events, the Court was unanimous.
 In the ensuing half-century, the Court has reaffirmed and
expanded the Feres doctrine, while somewhat adjusting the reasons
given for it. The most significant expansion, from a conceptual
standpoint, came in Chappell v. Wallace, 462 U.S. 299 (1983).
There, the Court used the incident to service test to bar a suit by
seamen, not against the government under the Federal Tort Claims
Act but against individual navy superiors, for deliberate racial
discrimination in making assignments and other personnel decisions. 
See Chappell, 462 U.S. at 304-05.
 The Chappell suit was brought under the Bivens doctrine,
which gives individuals federal tort claims against government
officials for constitutional violations, here, racial
discrimination. Bivens v. Six Unknown Named Agents of Fed. Bureau
of Narcotics, 403 U.S. 388 (1971). Although the Federal Tort
Claims Act's like-circumstances requirement was irrelevant to such
a suit (brought directly under the Constitution), the Court simply
invoked Feres's policies to bar recovery, pointing to Bivens's
express caution that remedies may not be available when "special
factors counselling hesitation" are present. Chappell, 462 U.S. at
298 (quoting Bivens, 403 U.S. at 396). 
 Although Chappell relied directly on Feres, it focused
primarily on only one of the reasons given in Feres, namely, the
concern that tort suits would interfere unduly in military affairs
and specifically on the need for exclusivity in military discipline
and grievance matters. Chappell, 462 U.S. at 301-02. This aim to
protect an exclusive military sphere of authority was emphasized
again in United States v. Shearer, 473 U.S. 52, 57 (1985) (an FTCA
case), and in United States v. Stanley, 483 U.S. 669, 682-83 (1987)
(a Bivens case), and United States v. Johnson, 481 U.S. 681, 690-91
(1987) (an FTCA case), both decided two years after Shearer. The
circuit courts, with a few exceptions, have followed the Supreme
Court's lead in generously applying and even extending Feres to
different fact patterns and different claims.
 The incident to service test itself has become a
talisman, although perhaps not so intended (Justice Jackson spoke
also of "service connected" injuries, Feres, 340 U.S. at 142).
Courts have sought to determine whether an injury was incident to
service by asking whether it occurred on a military facility,
whether it arose out of military activities or at least military
life, whether the alleged perpetrators were superiors or at least
acting in cooperation with the military, and--often stressed as
particularly important, see Johnson, 481 U.S. at 686 & n.7--whether
the injured party was himself in some fashion on military service
at the time of the incident. No single element in the equation,
the Supreme Court has said, is decisive. See Shearer, 473 U.S. at
57.
 Judged mechanically by such criteria, see, e.g., Kellyv. Panama Canal Comm'n, 26 F.3d 597, 600 (5th Cir. 1994) (three
factor test), Day's claims against the United States are barred. 
Day, a serviceman, was threatened and assaulted while on military
service and on a military base. The threats and assault were
perpetrated by other service personnel in the course of hazing
activities which, however outrageous, are no strangers to military
life and were apparently inflicted on other personnel as well as
Day. The perpetrators were subject to military discipline; Day was
entitled to medical treatment if required. True, Day was asleep
just before the assault began, rather than on duty; but this is a
small point and practically the only one in his favor under Feres.
 That the torts in this case were intentional, on the part
of some of the defendants, does not itself defeat Feres. Chappellitself involved claims of intentional racial discrimination, see462 U.S. at 297, and Stanley involved the deliberate but
undisclosed subjection of a serviceman to an LSD experiment, see 
483 U.S. at 671-72. We conclude that Day's claims against the
United States or its components are thus barred by Feres.
 Possibly Feres itself deserves reexamination by the
Supreme Court. A few of Feres's original reasons no longer seem so
persuasive, cf. Johnson, 481 U.S. at 694-700 (Scalia, J.,
dissenting), and intrusions by courts to grant equitable relief in
military matters have become more familiar in recent years. Seeid. at 700. But some core concerns about interference in military
discipline remain highly plausible, cf. Chappell, 462 U.S. at 300,
even if they might be assuaged by a narrower rule. And the Supreme
Court has increasingly reminded the lower federal courts that
departures from prior Supreme Court precedent should not normally 
be pioneered by circuit or district judges. Khan v. State Oil Co.,
93 F.3d 1358, 1363 (7th Cir. 1996), rev'd on other grounds, 118 S.
Ct. 275 (1997).
 This brings us to the second set of claims presented by
Day's complaint, namely, his claims not against the United States
or its components but against individual guardsmen, both under
section 1983 and for various state-law torts. As to Towle and
Caton, none of these claims was certified under the Westfall Act. 
Duquette was not certified as to the federal claim under section
1983, and Day challenges the certification of the state law claims
for Duquette (an issue addressed below).
 The question whether the Feres doctrine protects the
individual defendants in this case is easier as to some claims than
as to others. At the easier end of the spectrum are federal
claims. The only one set forth in the complaint is the claim,
under section 1983, directed against Duquette, Towle, Caton and
Does 1 through 8. We will assume arguendo that the physical attack
on Day itself might colorably raise a claim of unlawful seizure or
even a substantive due process violation, subject to redress under
Bivens if done under color of federal law or under section 1983 if
done under color of state law. Nevertheless, in our view the case
law bars such federal-law claims wherever the United States itself
is protected by the Feres doctrine as to the same injury.
 Feres itself was concerned solely with the vicarious
liability of the United States under the Federal Tort Claims Act. 
But in Chappell, as already noted, a unanimous Supreme Court held
that Bivens actions against individual defendants raised the same
policy concerns (primarily, the need for military autonomy); and
the Court felt free to read an implied Feres limitation into a
federal claim whose contours were the Supreme Court's
responsibility. Elsewhere, the Supreme Court has indicated that
immunity-related limitations on Bivens are presumptively to be
applied to claims under section 1983. Butz v. Economou, 438 U.S.
478, 500 (1978).
 This court has already held that Feres applies to section
1983 claims against individuals, as have several other courts, and
suggested that the same implied limitation must be read into
"kindred" claims based on like federal statutes. Wright, 5 F.3d at
591. It is true that Bivens claims were virtually invented by the
Supreme Court, while section 1983 is a federal statute shaped by
Congress. But much of the ancillary law under section 1983,
especially that related to immunities, was also created by the
Supreme Court. See Butz, 438 U.S. at 500-502. It is therefore not
easy to see why the Supreme Court would impose an implied
limitation on Bivens claims based on what it deemed compelling
federal policy interests reflected in Feres and refuse to apply
that limitation to federal claims brought under section 1983 or
similar federal statutes.
 While Feres thus disposes of any section 1983 claims in
this case against individual defendants, the question remains
whether Feres also bars claims under state law against individual
defendants; and in addressing this issue, we reserve for the moment
the possibility that such individuals may be protected under the
Westfall Act. In fact, the central issue is whether individualscan be sued under state law in situations where Feres applies
because the injury is incident to service (thus barring suits
against the government) but where the defendant's conduct is
outside the scope of employment (thus eliminating a defense for the
individual under the Westfall Act). 
 One might suppose that federal policies to protect
military autonomy, strong enough to create an implied exception to
Bivens for injuries incident to service (and, we have held in
Wright, to other federal claims like section 1983), would also be
offended by allowing state claims against individuals for such
injuries--perhaps even more so since they are even more likely to
be brought in state court. Several courts have so held without
much hesitation. See Stauber v. Cline, 837 F.2d 395, 399-400 (9th
Cir. 1988); Hefley v. Textron, Inc., 713 F.2d 1487, 1490-92 (10th
Cir. 1983) (collecting cases). True, the Supreme Court has no
authority, as it does with federal claims, simply to interpolate
exceptions; but it can recognize federal immunities to state
claims, so far as needed to protect the federal functions, and has
done so in the past. Howard v. Lyons, 360 U.S. 593 (1959); Barrv. Matteo, 360 U.S. 564 (1959).
 Nevertheless, the Supreme Court has not yet taken this
step of converting Feres into an immunity for individuals against
state law claims. To do so would mean that military service
personnel who were the victims of serious intentional torts
inflicted by other service personnel on base would effectively be
denied any civil remedy against a wrongdoer who was not acting
within the scope of his military employment--a result that has
caused more than one court to blanch. See, e.g., Lutz v. Secretary
of the Air Force, 944 F.2d 1477 (9th Cir. 1991). Instances would
be one serviceman deliberately shooting another in the course of an
on-base card game, or the on-base rape of one enlistee by another.
 In such cases, the Feres doctrine already protects the
federal treasury. Further, the core concerns of Feres about
military discipline are largely--although not entirely--assuaged by
the ability of the United States to certify under the Westfall Act
those state-law claims against military personnel which it believes
are sufficiently related to the defendant's duties to fall within
the scope of defendant's employment. Thus, the use of force by a
superior to compel obedience to an order would be within the scope
of employment, and therefore certifiable, no matter how mistaken
the superior's judgment.
 Nor is there a clear consensus in the circuits in favor
of extending Feres to state law claims against individuals for
conduct outside the scope of their employment. As already noted,
some cases have assumed that Feres barred such state claims even
against the individual serviceman, but a respected Seventh Circuit
panel held squarely that Feres should not be read in this fashion. 
Cross v. Fiscus, 830 F.2d 755, 757 (7th Cir. 1987). This court in
Wright v. Park went no further than to say that Feres governs
claims under section 1983 and "kindred statutes," referring in
context to the federal whistleblower statute, 5 U.S.C. 2301-02,
so the issue we now face is an open one in this circuit.
 The memories of an Army at war world-wide have faded
since Justice Jackson's day, and Feres has now been questioned in
whole or in part by three current members of the Supreme Court. SeeJohnson, 481 U.S. at 702 (Scalia, dissenting, joined by Brennan,
Marshall and Stevens); Stanley, 483 U.S. at 709 (O'Connor,
concurring in part and dissenting in part). This is of no
consequence as to claims against the government, or brought under
Bivens (or section 1983), since Feres remains the binding
precedent. But it does warrant some caution in a too swift
extension of Feres by the lower federal courts to eliminate a set
of claims (those based upon state law) made only against an
individual soldier for conduct that the government itself has
declined to certify under the Westfall Act.
 The issue is very close and the Supreme Court may yet
take the step of converting Feres into a formal immunity barring
state law claims against individuals for conduct, however
unauthorized and deliberate, that causes injury to the plaintiff
incident to military service. But the risk of some injustice is
manifest, the policy arguments for the extension are at the margin,
and the Supreme Court has been increasingly loath to override state
law in areas of traditional state responsibility without a clear
Congressional mandate. See Wisconsin Pub. Intervenor v. Mortier,
501 U.S. 597, 605 (1991). If the step is to be taken, it should be
taken by the Supreme Court or upon more evidence that without it
military autonomy will be seriously threatened.
 It is worth stressing that the claims thus preserved
involve only a narrow class of cases, namely, ones where the
plaintiff's injury is "incident to military service" but
defendant's misconduct is so patently unconnected to his or her
official duties as to fall outside the scope of employment. If the
government represents in a Westfall Act certificate that the
conduct is within the scope of employment--itself a quite broad
concept--we would expect that the deference ordinarily shown to
the executive in military matters would normally carry the day. 
See Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953). Cf. Gilliganv. Morgan, 413 U.S. 1, 10 (1973). Indeed, if the government here
had shown that Day's hazing was part of a military toughening-up
policy, all claims against the individuals would be barred under
the Westfall Act, no matter how unattractive the policy might be. 
Cf. Stanley, supra.
 This resolution leaves standing (so far as Feres is
concerned) Day's state tort claims against individual defendants,
and it brings us to issues of certification under the Westfall Act. 
If the United States was properly substituted in this case for an
individual defendant under the Westfall Act, then the state claims
against that defendant are barred under the Westfall Act itself. 
28 U.S.C. 2679(d). Nor in that instance does the claim proceed
against the United States, since it is protected by Feres. 
Therefore, we must now review the district court's decision
upholding the Westfall Act certification of Duquette, a decision
appealed here by Day.
 A plaintiff who challenges a defendant's certification
under the Westfall Act bears the burden of proving the defendant
acted outside the scope of his employment. See Rogers v.
Management Technology, Inc., 123 F.3d 34, 36 (1st Cir. 1997). Day
now argues that the district court should have held an evidentiary
hearing to determine whether Duquette was acting within the scope
of his employment under the Westfall Act; he does not challenge the
certification of Balisle and Duclos who were not present during the
attack. However, Day apparently did not request an evidentiary
hearing in the district court and, in any event, we do not believe
that one was necessary in this case given the state of the
pleadings and evidence in the district court.
 Day's verified complaint alleged that "Duquette . . .
threatened Day that he would be the victim of similar attacks [to
those he had witnessed]" and that "Duquette was present during the
Attack and aided and abetted the Attack." Duquette's affidavit,
filed in opposition to the Day's motion for relief from the order
substituting the United States for Duquette, stated that Duquette
had discussed hazing incidents with Day, but that Duquette had
"told him that I thought it was unlikely that such an incident
would happen to him." Duquette also admitted to being present at
the attack on Day for a few moments, but said that "[a]s soon as I
realized what was taking place, I . . . told them to stop." Day
filed no other affidavits or other evidence of his own.
 Before a court is called upon to convene an evidentiary
hearing, it is entitled to something more than conclusory
abstractions from the party demanding the hearing. In this case,
it had nothing but quasi-legal generalities in Day's complaint
("threatened," "aided and abetted"), juxtaposed with a factual and
exculpatory account from Duquette. Day was free to counter
Duquette's affidavit with details of his own to create a conflict
on the facts, but he chose not to do so. In this case, whether or
not Day asked for a hearing, he did not justify one under ordinary
summary judgment standards, Medina-Munoz v. R.J. Reynolds Tobacco
Co., 896 F.2d 5, 8 (1st Cir. 1990), which are a good analogy in
this instance.
 Neither party has addressed the First Circuit precedent
of Wood v. United States, 995 F.2d 1122 (1st Cir. 1993). We
mention it here because of its holding that the government cannot
base its certification of the defendant on a determination that the
"harm-causing incident" alleged by plaintiff did not occur at all. 
Id. at 1129. Reading some language in Wood very broadly, one might
conclude that the district court has to accept the plaintiff's
entire version of facts, including his characterization of events. 
However, Wood makes clear that it is only the existence of a harm-
causing incident that must be assumed to be true and not the
plaintiff's characterization of events. See id.
 In this case, there is no dispute that Day was assaulted. 
Indeed, both Duquette and Day agree that they had conversations
about hazing incidents, that Day was ultimately attacked, and that
Duquette was present for at least part of the attack. As stated in
Day's brief, "[t]he difference between Day's recollection of events
and Duquette's recollection lies in the characterization of
Duquette's actions." Therefore, it was permissible under Wood for
the district court to uphold the certification of Duquette. See
id. at 1129.
 Where, after all this, does Day's case stand? As to the
federal government defendants, all claims--whether against the
United States (substituted for Duquette and two other defendants)
or the Department of the Air Force (named in the complaint) are
barred by the Feres doctrine. It does not matter whether the
Massachusetts National Guard is viewed as a federal or state
entity. See generally Bowen v. Oistead, 125 F.3d 800, 804-05 (9th
Cir. 1997). If federal, Feres applies; if not, damage claims
against it in federal court are barred by the Eleventh Amendment. 
See Alabama v. Pugh, 438 U.S. 781, 782 (1978).
 As to the individual defendants, the federal claims
against any of the defendants are also barred by Feres' incident to
service test. State claims against Duquette, Balisle and Duclos
are barred by the Westfall Act certifications upheld by the
district court; in this regard we uphold the district court's
dismissal but based on the certifications rather than Feres. Our
only real difference with the district court concerns the state
claims against Towle, Caton and Does 1-8; those claims were not
certified and, as we read the Supreme Court cases, are not
protected by Feres--because we do not view it as extending (at
least so far) to state claims brought against individuals for
conduct not within the scope of their employment.
 On remand, the district court is under no obligation to
retain jurisdiction over the reinstated state claims against Towle,
Caton and Does 1-8. Indeed, we would be surprised if the district
court chooses to exercise supplemental jurisdiction in these
circumstances. See 28 U.S.C. 1367(c)(3); United Mine Workers v.
Gibbs, 383 U.S. 715, 726 (1966). However, if it does decline to
exercise jurisdiction, dismissal should be without prejudice to
Day's assertion of such claims in state court.
 The judgment of the district court is vacated insofar as
it dismissed on Feres grounds the state claims asserted against
Towle, Caton and Does 1-8, and in all other respects the judgment
is affirmed. The case is remanded for further proceedings
consistent with this opinion. Each side shall bear its own costs
on this appeal.
 It is so ordered.